Carmen Suarez-Smith
11003 Dornoch Castle Street
Las Vegas, Nevada 89141
(702) 810-5499
*Plaintiff pro se*



# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Carmen Suarez-Smith,<br><br>        Plaintiff,<br>vs.<br><br>Bank of America, N.A., s/b/m BAC Home Loans Servicing, L.P. f/k/a Countrywide Home Loans, Inc.; New Penn Financial LLC d/b/a Shellpoint Mortgage Servicing; Sables, LLC; and The Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Alternative Loan Trust 2007-6,<br><br>        Defendants. | Case<br><br>**2:16-cv-01478-KJD-PAL**<br><br>**COMPLAINT FOR ENFORCEMENT OF RESCISSION OF MORTGAGE LOAN; FOR INJUNCTIVE RELIEF; OR, IN THE ALTERNATIVE, QUIET TITLE** |

Plaintiff Carmen Suarez-Smith ("Plaintiff"), appearing *pro se*, hereby alleges and complains as follows:

## PARTIES

1. Plaintiff is **Carmen Suarez-Smith**, 11003 Dornoch Castle Street, Las Vegas, Nevada 89141. Defendants are **Bank of America, N.A., s/b/m BAC Home Loans Servicing, L.P. f/k/a Countrywide Home Loans, Inc.** ("BANA"), 400 National Way, Simi Valley, California 93065; **New Penn Financial LLC d/b/a Shellpoint Mortgage Servicing** ("Shellpoint"), 75 Beattie Place, Suite 300, Greenville, South Carolina 29601; **Sables, LLC** ("Sables"), 3753 Howard Hughes Parkway, Suite 200, Las Vegas, Nevada 89169; and **The Bank of New York Mellon f/k/a The Bank of New York** ("BNYM") **as Trustee for the Alternative Loan Trust 2007-6** (the "securitized trust"), 101 Barclay Street 4W, New York, New York 10007.

## JURISDICTION and VENUE

2. Jurisdiction arises under **Title 15 U.S. Code § 1635** (Right of Rescission as to Certain Transactions). This court has authority to hear Federal Law pursuant to **28 U.S.C. § 1331** (Federal

Question).

3. This court also has supplemental jurisdiction over all other claims that are so related to claims in this action that they form part of the same case or controversy under Article III of the United States Constitution, pursuant to **28 U.S.C. § 1367**.

4. Venue is properly laid in the Federal Court of the United States in the Judicial District of Nevada, pursuant to **28 U.S.C. § 1391(c)**.

5. Plaintiff avers that the court has *in personam* jurisdiction over the named Defendants as Defendants are subject to the Jurisdiction of this Federal Court by the following facts:

   (a) Each Defendant herein is subject to **Title 12 U.S.C. § 2605** (Servicing of Mortgage Loans and Administration of Escrow Accounts) and/or **Title 15 U.S. Code § 1635** (Right of Rescission as to Certain Transactions) by either

   (i) acting as a mortgage loan servicer on behalf of the purported "creditor" to the transaction, which "creditor" was intended to be an "investment" (securitized) trust created for the purpose of converting Plaintiff's loan – along with many others – into mortgage-backed securities, but transfer of legal ownership of Plaintiffs' loan to this securitized trust was never completed in accordance with the trust agreements and controlling trust law;

   (ii) concealing the true ownership of the subject loan;

   (iii) misrepresenting the application of Plaintiffs' payments;

   (iv) holding itself out as the purported "creditor" with no authority to do so; and/or

   (v) otherwise expressing an interest in the enforcement and/or foreclosure of the subject loan.

## NATURE OF THE ACTION & FACTUAL BACKGROUND

6. This case arises out of Plaintiff's rescission of a certain mortgage loan by way of notice correspondence ("Rescission Letter") submitted via Certified Mail to Defendant BANA, who held itself out as the "creditor" at the time the Rescission Letter was mailed and delivered.

7. The said mortgage loan was "originated" by a now-defunct company known as

2

"Countrywide Home Loans, Inc." ("Countrywide"), and purportedly "secured" real property located in Clark County, Nevada, and commonly known as 11003 Dornoch Castle Street, Las Vegas, Nevada 89141. The Deed of Trust, which contains the property's legal description, was recorded in Clark County, Nevada.

8. Plaintiff soon began to discover the fact that virtually 100% of loans originated by Countrywide were already pre-sold into the secondary market for the purpose of converting said loans into securities (a process hereafter referred to as "securitization"). The ramifications of securitizing Plaintiffs' loan include, among other things, (1) that the loan was not actually funded by Countrywide, but instead, was funded by monies which had been solicited in advance from undisclosed secondary-market investors; (2) that the Plaintiff's monthly mortgage payments would ultimately be disbursed to said investors as "returns" under terms and conditions which differed greatly from those represented in the loan documents which Plaintiff was induced to sign under false pretenses; and (3) that no creditor existed that applied, or was capable of applying, Plaintiff's mortgage payments toward "principal" and "interest" as was stated throughout the mortgage loan documents.

9. As a result of the securitization of Plaintiff's loan, the actual transaction which occurred, and through which the Plaintiff's payments were "serviced," was not described in the subject Note and Deed of Trust. Therefore, the transaction which was described in the Note and Deed of Trust never happened. Consequently, the rights and obligations of the parties were also misrepresented in the said loan documents.

10. Because the transaction in the loan documents never transpired, there was never any "closing" or "consummation" of said transaction. Additionally, because the actual transaction – a disguised securities transaction – which did transpire was never disclosed to the Plaintiffs, that securities transaction also never "closed" or was "consummated."

11. In or around 2008, Countrywide failed and was succeeded by Defendant BANA, who purportedly acquired all the assets and liabilities of the failed institution. Plaintiff was subsequently notified by BANA to make all further payments to BANA. In all statements and correspondence sent to the Plaintiffs, never once did BANA reveal to the Plaintiff the truth regarding, among other things, (1) that the Plaintiff's loan had been securitized; (2) the fact that the loan was not funded by

1  Countrywide; or (3) the fact that the monthly mortgage payments would not be applied toward
2  "principal" and "interest" as was stated in the loan documents. Instead, BANA continued to represent
3  that it was the "creditor" when it was not, and continued to enforce the collection of payments as if
4  every representation in the loan documents were true and correct, when, in fact, they were not.

5      12. Plaintiff's research verified that her loan had indeed been securitized into a trust for
6  which Defendant BNYM purportedly acted as "trustee." This fact has been confirmed several times
7  thereafter, most recently in a "Notice of Breach and Default and of Election to Sell the Real Property
8  Under Deed of Trust" ("Notice of Default") recorded in Clark County, Nevada on or about May 25,
9  2015. Said Notice of Default claims – falsely and/or incorrectly – that Defendant BNYM is both the
10 "holder of the note" and the "beneficiary of record" of the Deed of Trust.

11     13. On or about October 13, 2010, Plaintiff submitted a Rescission Notice to BANA via
12 Certified Mail #7008 1830 0003 7443 3191, notifying BANA of Plaintiff's intention to exercise her
13 right to rescind the loan under applicable federal law, clearly identifying the loan by number and
14 plainly stating their reasons for the rescission. The Rescission Notice made it clear that because the
15 disguised securities transaction was never disclosed to the borrower, the "loan closing was never
16 completed" and that the "right of rescission was never waived nor did it expire." Defendant BANA
17 received and signed for the Rescission Notice on or about October 15, 2010. A copy of the said
18 Rescission Notice is attached hereto as Exhibit "1."

19     14. According to the federal rescission statute at 15 U.S.C. § 1635(b), Defendant BANA
20 was required, within twenty (20) days of receipt of Plaintiff's Rescission Notice, to either (a) honor the
21 rescission and return all the monies Plaintiff paid into the loan since its origin, or (b) file a judicial
22 action challenging the validity of Plaintiff's rescission, seeking a declaration to that effect. In
23 accordance with the above statute, if the noticed party fails to challenge the rescission by initiating a
24 judicial action for such relief within the twenty day period, that party forever waives the right to raise
25 challenges or defenses thereto.

26     15. It has been more than twenty-one (21) days since Defendant BANA Mortgage
27 Corporation received Plaintiff's Rescission Notice.

28     16. On information and belief, BANA never obtained a judicial declaration invalidating

4

Plaintiff's rescission, nor did BANA commence a judicial action challenging Plaintiff's rescission within twenty days of having received the Rescission Notice.

17. Additionally, BANA never, at any time, honored the terms of the rescission by returning Plaintiff's money and terminating the security interest (Deed of Trust) as required by law.

18. BANA is in violation of 15 U.S.C. § 1635(b), which states, in pertinent part:

> **(b) Return of money or property following rescission**
> When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. **Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.** If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. *[Emphasis added.]*

19. On or about January 24, 2011 (several months after the subject loan had been rescinded), non-party Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") recorded in Clark County, Nevada, an "Assignment of Deed of Trust" ("Assignment") executed by a person purporting to act as "Assistant Secretary," in which MERS purported to "assign" the beneficial interest in Plaintiff's Deed of Trust "together with the note" to Defendant BNYM as Trustee of the subject securitized trust. It is anticipated that, as a result of this fabricated attempt to "assign" a loan which was rescinded years ago, U.S. Bank will pursue a non-judicial foreclosure.

20. In addition, in or around 2015, Defendant New Penn Financial LLC d/b/a Shellpoint Mortgage Servicing purportedly became the loan "servicer" and in or around October of 2015, Defendant Sables, LLC purported to be substituted as Trustee of the subject Deed of Trust by BNYM, acting as "beneficiary." These entities continue their attempts to enforce the subject loan obligation which has long since been rescinded by operation of law.

21. Plaintiff therefore seeks the following relief from the instant Court: (1) a Declaration that the Defendants, and each of them, have waived all defenses and challenges to the Plaintiff's Rescission Notice by failing to timely comply with or challenge same within the twenty (20) day period of having received the Notice; (2) an Order directing Defendant BANA to comply with the terms of 15 U.S.C. § 1635(b) as they pertain to the rescission of Plaintiff's loan, i.e., the repayment of all monies Plaintiff paid as earnest money, loan payments and fees, and the termination of the security interest in the subject property currently recorded in Clark County, Nevada; and (3) Injunctive Relief enjoining Defendants New Penn Financial LLC d/b/a Shellpoint Mortgage Servicing; Sables, LLC; and The Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Alternative Loan Trust 2007-6 from any further enforcement and/or foreclosure proceedings against the Plaintiff. In the alternative to Injunctive Relief, Plaintiff requests that the Court quiet title in favor of the Plaintiff, removing all claims and other recorded interests by the Defendants who have failed to obey their obligations under the above rescission statute.

## FIRST CAUSE OF ACTION

## ENFORCEMENT OF RESCISSION UNDER 15 U.S.C. § 1635

### (Defendant BANA)

22. Plaintiff repeats and re-alleges all prior paragraphs as though fully set forth here.

23. At all times relevant, Defendant BANA held itself out to the Plaintiff as the "creditor" of the subject loan. BANA never once indicated that the payments Plaintiff had been making were actually being disbursed to a different entity under terms and conditions which differed greatly from those contained in the loan documents executed by the Plaintiff.

24. For the reasons stated herein, Plaintiff submitted a Rescission Notice to Defendant BANA via Certified Mail, on or about October 13, 2010. Said Rescission Notice was received and signed for by BANA on or about October 15, 2010. The Rescission Notice complied with 15 U.S.C. § 1635; thus, in accordance with the 2015 United States Supreme Court ruling in *Jesinoski v. Countrywide* (Case No. 13-684), notice that the subject loan had been rescinded was legally and properly served to BANA.

25. Under 15 U.S.C. § 1635(b), Defendant BANA was required to either (a) honor the

1 terms of the rescission by returning to the Plaintiffs all the monies they had paid toward the loan since its origin and terminating the security interest (Deed of Trust) recorded in the property records of Clark County, Nevada; or (b) challenge the rescission by commencing a judicial action in a court of competent jurisdiction, within twenty (20) days from the date it received Plaintiff's Rescission Notice.

26. It has been more than twenty-one (21) days since Defendant BANA signed for and received Plaintiff's Rescission Notice, and yet, BANA never returned Plaintiff's money, nor was Plaintiff ever served with a summons for any judicial action seeking to challenge Plaintiff's rescission of the subject loan.

27. Having waived its opportunity to judicially challenge Plaintiff's statutory rescission, Defendant BANA is now barred from all defenses or challenges thereto.

28. Defendant BANA is still legally liable for the return of all of Plaintiff's monies which were paid into the loan before it was rescinded (via submission and receipt of Plaintiff's Rescission Notice), as well as terminating the recorded security interest (Deed of Trust).

29. Therefore, Plaintiff seeks an Order from this Honorable Court compelling BANA to comply with its obligations under 15 U.S.C. § 1635(b) and to (1) return to the Plaintiff all the monies which were paid into and toward the subject loan, including, but not limited to, earnest money, down payment, monthly mortgage payments, and all fees related to such payments; and (2) terminate, cancel and/or expunge the subject security interest (Deed of Trust) recorded in the property records of Clark County, Nevada.

30. In addition, to confirm both the total amount of monies Plaintiff paid into the subject loan, and whether the monthly mortgage payments were properly applied toward "principal" and "interest," Plaintiff requests an Order by the Court directing Defendant BANA to provide a true and correct accounting which shows how and to whom all payments and fees paid by the Plaintiff were disbursed since the origination of the loan.

31. Plaintiff further seeks an award of equitable compensatory damages, in an amount to be determined at trial, based on this Defendant's failure to comply with the federal statute cited herein which required it to act on Plaintiff's Rescission Notice within twenty (20) days, which damages should include, but not be limited to, prejudgment interest on the total amount of monies (actual

damages) which were required to be returned to the Plaintiff within the statutory time limit following submission of the Rescission Notice. Based on the fact that Plaintiff is a senior, this amount may be trebled.

32. Finally, Plaintiff seeks an award for her costs and legal fees incurred in the commencement and pursuance of this action.

## SECOND CAUSE OF ACTION
## INJUNCTIVE RELIEF / QUIET TITLE
### (All Defendants)

33. Plaintiff repeats and re-alleges all prior paragraphs as though fully set forth here.

34. Subsequent to the rescission of the subject loan, and directly as a result of BANA's failure to comply with its obligations under 15 U.S.C. § 1635(b), the other Defendants to this action have, at one time or another, expressed an interest in pursuing the unlawful collection, enforcement, and/or foreclosure of the said loan and the real property associated therewith, even though the loan is now rescinded by operation of law. The purported interests of the Defendants include, but are not limited to the following:

    a.    BNYM has been listed – falsely – as the "note holder" and "beneficiary" since the recordation of the fabricated "Assignment of Deed of Trust" recorded by MERS and robo-signed by a person claiming to be an "officer" of MERS when MERS has no officers or employees; and in addition, the securitized trust for which BNYM purports to act as "trustee" was prohibited – by its own agreements – from acquiring Plaintiff's loan in the manner attempted by the parties;

    b.    New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing has submitted various correspondences to the Plaintiff stating it has become the new loan "servicer" and expressing a clear intent to pursue foreclosure if the supposed "past due balance" is not paid or the purported "default" not cured; and

    c.    Sables, LLC claims it has become the "substituted trustee" of the subject Deed of Trust by way of a "Substitution of Trustee" ("Substitution") recorded in

Clark County on or about October 16, 2015, and would be the entity called upon to conduct a non-judicial foreclosure at the behest of the purported "beneficiary."

35. Since BANA always held itself out as the "creditor" to the Plaintiff at the time Plaintiff submitted her Rescission Notice, it was BANA's duty not only to honor its obligations under 15 U.S.C. § 1635(b) to return to the Plaintiff all the monies remitted by her toward repaying the loan and to terminate the Deed of Trust, but also, to notify all other interested parties that the subject loan had been rescinded by operation of law, since obviously, Plaintiff could not notify, and thus was under no obligation to notify, such interested parties of which she had no knowledge as to their existence. As such, Plaintiff does not seek monetary damages against these Defendants at this time.

36. However, based on the instruments which have been fabricated and recorded in Clark County, Nevada, concerning this matter subsequent to the subject loan's rescission, it is expected that these other Defendants will attempt to pursue a "foreclosure" of the subject loan with the intent of taking Plaintiff's property under such false pretenses. For this reason, Plaintiff seeks a Permanent Injunction forever enjoining these Defendants and all other parties from pursuing any further "enforcement" or "foreclosure" of the subject loan obligation which no longer legally exists.

37. As an alternative to a Permanent Injunction, Plaintiff requests that the Court quiet the title records in favor of Plaintiff, removing all false, rogue or otherwise invalid claims which remain as a result of the Defendants' failure to honor their obligations under 15 U.S.C. § 1635(b).

///
///
///
///
///
///
///
///
///

## CONCLUSION

WHEREFORE, having set forth a legally sufficient cause of action against the named Defendants, Plaintiff prays that the Court issue Orders and award damages as stated herein, and for such other and further relief which the Court may deem just and proper.

Respectfully submitted this 21st day of June, 2016.

Carmen Suarez-Smith
11003 Dornoch Castle Street
Las Vegas, Nevada 89141
(702) 810-5499
*Plaintiff pro se*

## VERIFICATION

I, Carmen Suarez-Smith, am the Plaintiff in the above-entitled action. I have read the foregoing **COMPLAINT FOR ENFORCEMENT OF RESCISSION OF MORTGAGE LOAN; FOR INJUNCTIVE RELIEF; OR, IN THE ALTERNATIVE, QUIET TITLE** and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

_____
Carmen Suarez-Smith

STATE OF NEVADA    )
                   ) s.s.
COUNTY OF CLARK    )


This instrument was acknowledged before me on the 21st day of June, 2016, by Carmen Suarez-Smith.

_____
(Signature of Notary)

(Notary Seal) →

GRECIA DIAZ
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 12-27-17
Certificate No: 14-12582-1

# EXHIBIT "1"

## *Carmen Suarez-Smith*
*11003 Dornoch Castle Street*
*Las Vegas, Nevada 89141*
*(702) 810-5499*

---

13 October 2010                    Via Certified Mail # **7008 1830 0003 7443 3191**

TO:   Bank of America
      450 American Street
      Simi Valley, CA 93065

**REFERENCE:**
   **BORROWER: Thomas A. Smith**
   **TRUSTOR: Thomas A. Smith and Carmen Suarez-Smith**
   **PROPERTY ADDRESS: 11003 Dornoch Castle St., Las Vegas, Nevada 89141**
   **APN NUMBER: 177-31-712-035**
   **COUNTRYWIDE / BANK OF AMERICA ACCOUNT NUMBER: 154838040**
   **CLOSING DATE: 11 December 2006**

Dear Sir/Madame:

This letter will inform you that I, Carmen Suarez-Smith am pursuing a claim as successor to the estate of my late husband, Thomas A. Smith, the borrower on the above-referenced loan, pursuant to Nevada Revised Statutes 134.050.

Please be advised that, based upon information regarding the above-referenced mortgage loan, I believe there are claims against you and your company for negligence, breach of contract, and breach of fiduciary duty, along with other claims in law and equity which total more in financial damages than the client's equity (down payment), costs of closing, all points and interest paid to date plus the par value of the subject mortgage note.

This is a substantial claim that may exceed the policy limits on any and all insurance policies issued that cover the risks in this claim. Therefore, **please forward a copy of this letter to any company that has issued a policy of insurance covering errors, omissions, negligence or any other guarantee or indemnification relative to the above-referenced loan "closing." Failure to notify your insurance carrier may result in denial of coverage or denial of the duty to defend.**

The above-referenced loan closing involved conflicting documentation and failure to disclose the existence and true terms of a Pooling and Service Agreement and Assignment and Assumption Agreement that predated the loan closing and provided for fees, profits and payments that were never intended to be disclosed to my husband (as the borrower and signer of the promissory note), and that were withheld from my

*Demand and Rescission – Bank of America – 13 October 2010*                    *Page 1 of 4*

husband before, during and after the subject loan closing. It was not until exhaustive research was performed that the true facts are emerging, and which have caused me, as successor to my husband, to express an **immediate need and desire to rescind the alleged subject loan transaction.**

Based upon my research of news articles, court documents, and printed and recorded interviews with people who have knowledge of the practices and policies inherent in transactions of this nature, it is apparent that, contrary to federal and state law, you have participated in an extended pattern of conduct to further, foster, allow and promote an interstate conspiracy to deceive and defraud large groups of persons targeted as prospective borrowers in the United States, which includes my husband, and were further negligent in your supervision of your officers, directors, agents, affiliates, vendors and employees resulting in my suffering substantial financial and other injuries.

Further, I believe that since you, your insurance carriers, your agents, servants, vendors and employees must have known all or enough of the facts to know that my husband was not receiving the guidance, protection, due diligence or information to which he was entitled. Had he been apprised of the true facts, I believe he would not have executed the papers that were presented as ordinary mortgage loan documents but which were, in fact, part of an elaborate scheme for the execution of documents purporting to be loan documents but actually resulted in the issuance of a negotiable instrument with the intent on your part, but undisclosed and unknown to my husband, to change the terms and conditions of payment of the mortgage note from its stated terms, pay fees and profits to a variety of undisclosed third parties who were participating in the fraudulent sale of unregulated securities which purported to be backed by the mortgage note which my husband signed, and that appear to have misled investors into believing that the certificates they purchased were also backed by the property secured by the mortgage note bearing my signature.

Additionally, in light of ongoing newly-revealed information regarding appraisal fraud as being an important aspect and necessary part of the scheme, I believe that the appraised value used in the loan closing was not computed in accordance with industry guidelines for using comparable time frames and geography and other indicia of probable value.  The value reported to my husband by the Lender and the Lender's appraiser was intentionally or negligently tied to the contract price and was significantly higher than the real fair market value at that time. This disparity since has been easily corroborated by current values in the area, to wit: concurrent with the collapse of your scheme, the values of the real property purchased by myself and countless others have declined back to the levels that existed before this scheme was initiated.

This indicates a high probability that the appraisal review required of the nominal lender was omitted and/or intentionally terminated. It also indicates that the cost of the loan was significantly higher that what was reported on the GFE and other disclosure documents at the time of closing.  It is my contention that, since larger loans provided larger mortgage-backed securities, you willingly participated in a fraud whereby you

could increase profits by neglecting your legal duties and showing careless disregard for the financial well-being of the borrowers you serviced, myself included.

Further, it is apparent that you were aware and participated in the deception by which my husband was led to believe that the nominal lender was the actual lender, when in reality the nominal lender was "renting" its registration and charter to third parties who were neither chartered financial institutions nor registered business entities in the state in which the property was located.  I contend that you had full knowledge that the alleged "loan" closing was a sham through which unregulated, unregistered and unchartered people and businesses engaged in banking and lending contrary to federal and state law.

The standard procedure used in these "securitized" mortgage loans is that the "loan" was table funded and that the nominal lender was in fact merely a stand-in for a series of parties who were not disclosed as the source of the funds, not disclosed as the recipient of fees (including the nominal lender who may have received a fee of 2.5% of the par value of the mortgage note), and not disclosed as the actual lender in the subject loan transaction.  While all of the participants at the "loan" closing were aware of these facts, my husband was conveniently – but illegally – kept in the dark. As a result, my husband was never notified regarding the identity, authority, regulation, charter, or registration of the actual lender.

By keeping my husband in the dark about all of these elements of the fraud, you have taken his personal, sensitive information regarding his work history, social security number, financial data, etc. and used all of it without permission to generate profits for yourself and your company.  I believe this is defined as identity theft.

Altogether, the deceptive lending practices, lack of full disclosure, appraisal fraud, and lack of due diligence on the part of the lender concerning affordability and tangible benefits, created a condition wherein the true term of the loan was significantly overstated, making it highly likely that the loan would go into default at a time much earlier than the expressed term of the mortgage note.  Reducing the term of the loan to the time of expected default and adding the inflated appraisal resulted in an APR significantly exceeding the legal interest limit under state law.  These were facts known by every participant at the loan closing except my husband, and such practices violate applicable laws on usury entitling my husband's estate to nullification of the note, extinguishment of the mortgage, treble damages and attorney fees (if needed), in addition to the refund of all payments made, and other rebates and damages suffered.

Most importantly, it cannot be determined from the filings of the parties, nor the notices sent to my husband as borrower, who is the current actual holder in due course, who is entitled to payment under the mortgage note, whether additional third party payments were made from insurance products that are reported to have guaranteed either the payments or the principal of the mortgage note, or whether in fact the mortgage note has been prepaid, overpaid, or any balance is owed and if so, to whom. This prevents me from notifying the true source of funds (the actual lender) of my intent to rescind. It is

my determination, based upon these facts, that <u>the loan closing was never completed and that therefore the 3 day right of rescission was neither waived nor did it expire</u>. **Under the Federal Truth in Lending Act the appropriate party must either comply with the rescission or file a declaratory action seeking to avoid the rescission.**

In order for your institution to proceed with any foreclosure or trustee's sale/purchase of deed, **you must be the holder/owner of the original note and mortgage**, and I will demand that **the original note be produced**. It would seem obvious that, if indeed this mortgage was pooled with many others and sold as a separate instrument, you cannot both claim to have the original note and claim to have transferred it. Also, if the pooled asset was sold by you to other parties, which may have included insurance guaranteeing payment, then you have already been paid in full and no longer have any right to foreclose, demand payment, take physical possession of the property, or attempt to collect any other debt attached to the note and mortgage. I consider any of these actions by you to be an abuse of process and a violation of law, and <u>I herewith demand that you cease and desist in all such actions</u>.

In the mean time, under separate cover, I have submitted my Qualified Written Request under Section 6 of the Real Estate Settlement Procedures Act (RESPA) to get specific answers to my concerns.

Unless these matters are properly remedied, I intend to file an action against you for Misrepresentation based on some or all of the claims mentioned herein, and may include other claims as they are discovered. Upon the filing of that action, a Lis Pendens will also be recorded.

Therefore, based on all the foregoing, please respond to the issues presented in this letter within ten (10) days of its receipt. Your failure to respond within the ten-day period will be deemed as (1) a failure and/or refusal to comply with the rescission of the loan as stated in this letter, as well as (2) an admission that you no longer possess the original signed promissory note and cannot lawfully continue to pursue a foreclosure action/trustee's sale, both of which will be included as documentary evidence in the case file as the process moves forward toward a resolve of my increasing and continuing damages.

PLEASE GOVERN YOURSELVES ACCORDINGLY.

Sincerely,

*[signature]*
Carmen Suarez-Smith


Copy: Recontrust Company